UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM F. TITTLE,

     Petitioner,

vs.                                CASE NO. 8:10-cv-2489-T-27TBM

SECRETARY OF DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## O R D E R

Petitioner, a State of Florida inmate proceeding *pro se*, petitions for the writ of habeas corpus

pursuant to 28 U.S.C. § 2254 and challenges the validity of his two convictions for sexual battery

and his conviction for attempted kidnapping entered by the Sixth Judicial Circuit Court, Pinellas

County, Florida.   The Respondent argues that Petitioner's grounds should be dismissed on

procedural grounds or for failure to meet the threshold requirements of 28 U.S.C. § 2254(d) and (e).

### Procedural background

Petitioner pleaded guilty pursuant to a plea agreement and was sentenced as a prison releasee

re-offender to concurrent terms of thirty years imprisonment for each of the sexual battery

convictions and a concurrent term of fifteen years imprisonment for the attempted kidnapping

conviction.  Petitioner did not file a direct appeal.[1]

---

[1] Petitioner subsequently filed a *pro se* motion to define and/or clarify his sentence (which the state post-conviction court treated as a motion to correct an illegal sentence pursuant to Fla. R. Crim. P. 3.800(a)) in which he sought to have enforced a provision of his plea agreement that called for his Pinellas County sentences to run concurrently with a sentence in a separate but similar Hillsborough County case.  (Doc. 10, Ex. 8).  The state post-conviction court granted the motion.  (Doc. 10, Ex. 10).

Petitioner filed a *pro se* motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850. (Doc. 10, Ex. 11). The state post-conviction court rejected the motion and Petitioner appealed. (Doc. 10, Exs. 12, 13). On September 22, 2010, the state district court of appeal affirmed the denial of the Rule 3.850 motion in a *per curiam* decision without a written opinion. (Doc. 10, Ex. 14).

Petitioner filed his Section 2254 petition on November 3, 2010. The Respondent concedes the petition's timeliness. Petitioner presents two grounds for relief:[2]

| | | | |
|---|---|---|---|
| **Ground One:** | | The state trial court judge violated Petitioner's due process rights by not ordering a competency evaluation | |
| **Ground Two:** | Claim 1: | The guilty plea was not entered in open court in violation of state procedure | |
| | Claim 2: | Trial counsel rendered ineffective assistance by "failing to order a competency exam" | |
| | Claim 3: | Trial counsel rendered ineffective assistance by failing to offer mitigation evidence to reduce Petitioner's sentence | |
| | Claim 4: | Trial counsel coerced Petitioner into entering his guilty plea | |

Upon review, the petition must be DENIED.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court

---

[2] The petition enumerates two grounds for relief which include several sub-claims. Petitioner's memorandum of law includes a lengthy narrative without reference to any specific claim for relief. For clarity purposes, the court separates Petitioner's grounds into individual claims for relief as did the state post-conviction court in addressing the same claims in Petitioner's Rule 3.850 motion.

review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). *See Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to

decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 693. Federal courts must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 130 S. Ct. 1855, 1866 (2010).

In a *per curiam* decision the state district court of appeal affirmed the denial of Petitioner's Rule 3.850 motion. The *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).

Petitioner bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact, but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state courts' rejection of Petitioner's post-conviction claims warrants deference in this action.

### Standard of Review for Ineffective Assistance of Counsel

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel

4

claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S.

5

at 691-92. To meet this burden, Petitioner must show a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Petitioner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

### Discussion

**Ground One and Ground Two - claim 2**

Petitioner argues that both the state trial court judge and his counsel violated his constitutional rights by not ordering a competency evaluation.

A.   <u>Trial court error</u>

6

In ground one Petitioner contends that the state trial court judge violated his right to due process by "forcing Petitioner to take a plea and not ordering a competency examination upon learning facts that show forms of deficiency and comprehension of the Petitioner in trial court proceedings." (Doc. 1, p. 5). More specifically, Petitioner alleges that there were "telltale" signs of his lack of understanding of the plea process and that, despite his telling the trial judge "that because of numerous psychological medications, previous drug addictions, and past psychological trauma associated with him seeing his father being killed, he was unable to appreciate the matters before the court dealing [with] taking a plea for 30 years of his life." (Id.). Petitioner further faults the trial court judge for "never [having] inquired into the allegations of mental health nor further made any additional inquiry into the use of mind-altering medications." (Doc. 1, p. 6).

To the extent that Petitioners's allegations, liberally construed, assert a procedural due process violation resulting from the state trial court judge's failure to conduct a competency hearing, Petitioner cannot obtain relief. The state post-conviction court rejected this claim on a procedural basis in Petitioner's Rule 3.850 motion:

> Firstly, a motion pursuant to [R]ule 3.850 is not a substitute for a direct appeal where the issues raised in the post-conviction motion could have been raised on direct appeal. *Pedroso [v. State]*, 420 So. 2d 908 [(Fla. 2d DCA 1982)]. [T]he Defendant cannot now argue that he was deprived of a competency evaluation or that he was, in fact, incompetent.

> Secondly, the Defendant's claim is refuted from the face of the record. The Defendant underwent a thorough plea colloquy where he affirmed to the Court that in spite of the medication that he was taking at the time, that he was clear-minded and understood what he was doing. Furthermore, the Defendant spoke with counsel regarding the plea and expressed to counsel that he understood the terms of the plea and the rights he was giving up by entering into the plea. *See Gillis v. State*, 807 So. 2d 204 (Fla. 5th DCA 2004) (Record conclusively refuted post-conviction relief movant's claim that his guilty plea to robbery was involuntary and thus summary denial of motion was proper, where the written plea agreement stated that the plea

7

was entered freely and without coercion and movant indicated at plea hearing that the plea was made "freely and voluntarily, knowingly and intelligently," and that no one was "forcing," "coercing," or "promising" him anything to enter plea). Based upon the foregoing, the Defendant's claim is denied.

(Doc. 10, Ex. 12, p. 3) (court's record citation omitted).

The failure of a federal habeas petitioner to adhere to state procedural rules governing the proper presentation of a claim generally bars federal review of that claim in a subsequent federal habeas corpus proceeding. *See Coleman v. Thompson*, 501 U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 97 (1977); *Sims v. Singletary*, 155 F.3d 1297, 1311 (11th Cir. 1998). "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner." *Id*. The state post-conviction court expressly relied upon an independent and adequate state procedural bar to reject Petitioner's substantive claim. The state appellate court affirmed the application of the procedural bar. Consequently, ground one is procedurally defaulted. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). *See also Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (finding that the state appellate court's *per curiam* affirmance of the lower court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate

state law ground barring federal review).

Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d 880, 892 (11th Cir. 2003); *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Petitioner fails to demonstrate cause and prejudice excusing his default. *Carpenter*, 529 U.S.

9

at 451; *Carrier*, 477 U.S. at 495-96.  He neither alleges nor shows that the fundamental miscarriage of justice exception applies.  *Henderson*, 353 F.3d at 892.  Because Petitioner fails to proffer specific facts showing an exception to procedural default, ground one is procedurally barred from federal review.

Notwithstanding the procedural bar, as a threshold matter, Petitioner does not claim that he was, in fact, incompetent when he pleaded guilty.  Rather, throughout his memorandum of law[3] Petitioner makes numerous equivocal statements that he "may have been mentally incompetent." (Doc. 2, pp. 7, 8, 13).  As the respondent notes in the response, the record shows that the Petitioner underwent a competency evaluation by two mental health experts and was deemed competent to proceed.[4]  (Doc. 10, Ex. 16, p. 5).[5]  Petitioner does not contest either the validity or accuracy of the mental health experts' findings or the court's finding of competency.  Thus, it appears that Petitioner faults the state trial court judge for not undertaking a competency hearing after the competency evaluation.  However, Petitioner offers no evidence or legal authority, aside from his own self-serving statements, to support a finding that a competency hearing was required after the competency evaluation.  Petitioner likewise does not present evidence to support a finding that he was, in fact, incompetent when he entered his plea.

---

[3] Although afforded the opportunity, Petitioner did not file a reply to the response.

[4] Petitioner states in his memorandum of law that he "had previously been evaluated prior to the charge for which this charge had come about and one of the doctors had deemed him incompetent to proceed while the two other doctors deemed him competent." (Doc. 2, p. 3).  The state trial court docket includes an entry dated July 7, 2008, showing submission of a sealed psychological evaluation of the Petitioner by both Randy K. Otto, Ph.D., and Michael P. Gamache, Ph.D., and a July 7, 2008, entry noting that Petitioner was "found competent."  (Doc. 10, Ex. 15, p. 5). Neither the record nor the state court trial docket evinces another competency evaluation by a third mental health expert finding Petitioner incompetent as Petitioner suggests.  Petitioner does not provide any evidence of such an evaluation.

[5] *See also* online docket, Clerk of the Circuit Court, Pinellas County, Florida, Case No. CRC 07-03988CFANO at: https://public.co.pinellas.fl.us/servlet/pcg.wsclient.servlet.AdultDocketServlet.

To the extent that Petitioner challenges the validity of his guilty plea based upon his alleged incompetency, he likewise cannot prevail. During the change of plea hearing, the state trial court judge inquired of the parties about the status of plea negotiations and specifically afforded Petitioner the opportunity to address the court:

| | |
|---|---|
| COURT: | All right.  Under that prison releasee re-offender statute, it stands for this proposition that if a[n] offense is committed within three years of an individual's release from a state prison, then the legislature has set the sentence.  The legislature has literally decided what the sentence will be.  It's mandatory.  And I have no control over that sentence, so if you are convicted of the sexual battery, it is a mandatory life sentence.  The only entity that can negotiate otherwise is the prosecutor.  They have rejected your 20-year offer. |
| | So by law, that prosecutor is required to seek the maximum penalty.  So that's the situation that we're dealing with and I certainly don't want to get involved, you know, in negotiating your sentence, if any.  I'm here to give you a trial and, if you're convicted, you've got three life felonies pending here; two counts of sexual battery, one count of kidnapping. |
| | And the prosecutor would have to prove that up at a trial, but if they do, they are seeking, obviously, a sentence that would run consecutive to any sentence that you're doing because they have this obligation to seek the maximum penalty.  The only way to get max is to run things consecutive. |
| | [Counsel] cannot change the facts of the case.  Whatever those facts are, [counsel] cannot change the law.  I can't change the law.  We have to abide by the law.  That's the situation that we find ourselves in.  So, if you're going to be making an offer, the prosecutor has indicated to you that they have not accepted the offers that you've made thus far. |
| DEFENDANT: | Yes, sir. |
| COURT: | So, if you wish to make an offer, today would be a good day, but otherwise, I'll have to set it for trial.  When I set it for a trial, my position is negotiations are over. |

DEFENDANT:         Yes, sir.

[PROSECUTOR]:      And in this case, we've had negotiations in the case. I've
                   explained to [counsel] in the presence of Mr. Tittle though, as
                   well, that our case is one that happened after the Tampa case.
                   They did the Tampa sex battery in the morning, then commits
                   this crime, comes over here to Pinellas County. Our position
                   is they have 15 over there, we'll run - - ours should run
                   consecutive to that one over there. It's not a freebie. And
                   again, we're looking at a life sentence.

COURT:             So, unless there's some negotiation that you, you know, some
                   offer that you make that they accept, that's the situation.

DEFENDANT:         I'd like to - -

COURT:             Did you want to say something else?

DEFENDANT:         Yes, sir. I'd like to thank the State for their offer and I just
                   want to say something. I guess in my defense, I'm on
                   medication. I'm sure the Court knows that.

                   When I came from DOC, they didn't prescribe one of mine,
                   so they put me on something else and that's just been playing
                   havoc. You know, I'm saying one of the side effects is like
                   confusion and just, I can't hold thoughts, and I just - - I can't
                   keep things together in my mind; you know what I'm saying?
                   So, I don't mean to say that my attorney isn't doing his job or
                   anything like that, it's just hard for me to understand and you
                   know what I'm saying? I'm - - I've been having a hard time
                   lately.

                   I put in to [see] psyche to let them know what these meds are
                   doing to me but they [have] not yet asked to see me. Things
                   run kind of slow in the jail. So, you know, I'm not trying to
                   hold the court up [in] any way or say anything bad about my
                   attorney. I just, again, things are very chaotic for me at the
                   moment. But if I can, I would like to take the plea agreement
                   that's being offered, sir.

COURT:             All right. There is no agreement that's being offered. What
                   we're saying is you have to make an offer to the prosecutor
                   that they accept and, so far, you've offered 20 years. They

12

have not accepted that offer.

DEFENDANT:      Uh-huh.

COURT:          Do you understand that?

DEFENDANT:      Yes, sir.

COURT:          Okay. So, I'll have [a] talk with [counsel] and we'll find out
                if there's going to [be] another offer today.  Thank you.

. . . .

(Other cases were taken up by the court).

COURT:          [Counsel], are you ready?

[COUNSEL]:      Yes, Judge.

. . . .

COURT:          We are back on the record in State of Florida versus William
                Fred Tittle, 07-3988.  My understanding is that, and correct
                me if I'm wrong, [counsel], your client has authorized you to
                make an offer to the prosecutor.  They have evaluated it and
                there's going to be a change of plea.  They've accepted your
                offer.

[COUNSEL]:      Yes, Judge.   And just so the record's clear, my client
                authorized me to make my offer to them of 30 years.  When
                I made the offer to the State of 30 years, they had indicated
                that 30 years would be acceptable but it had to be as a PRR,
                so it would have to be a day-for-day sentence.

COURT:          It's a minimum mandatory.

[COUNSEL]:      Correct.  And to make sure that Mr. Tittle understood that, I
                went back to talk to him about that.   Of course, he would
                rather be sentenced as a habitual felony offender but I told
                him that was not the option.  I believe he still wants to
                proceed though; is that correct, Mr. Tittle?   You need to
                answer out loud.

13

DEFENDANT:      Yes.

. . . .

COURT:          All right.  And so you are going to be proceeding with the change of plea a this time, [counsel]?

[COUNSEL]:      We are, Judge.  I also discussed with Mr. Tittle, since he brought it to the Court's attention, that he had some medication issues.  I would make sure to inquire of him whether he understood what was going on.  We went through everything; his defenses, what his plea was going to be, what the State was going to do.  He indicated to me that he did understand those rights that he's giving up.  I also went over the Jimmy Ryce law with him.

COURT:          Okay.  All right.  So, let's get back to the business at hand. Mr. Tittle, would you please raise your right hand again?

(The defendant was duly sworn by the Court).

COURT:          All right.  Go ahead and put your hand down.  Get close to that microphone.  Please state your full name and your date of birth.

DEFENDANT:      William Fred Tittle, 6/28/77.

COURT:          All right.  Do you understand by pleading guilty to the two counts of sexual battery and to the one count of kidnapping, it means that we will not hold a jury trial in the future?

DEFENDANT:      Yes, sir.

COURT:          Do you understand that your attorney . . . will not be questioning the State's witnesses, including the victim, any further?

DEFENDANT:      Yes, sir.

COURT:          He will not be calling in defense witnesses if you have any nor will he be asserting defenses if any exist; do you understand that?

14

| | |
|---|---|
| DEFENDANT: | Yes, sir. |
| COURT: | Mr. Tittle, do you understand every person is presumed innocent?  You've heard that before, haven't you? |
| DEFENDANT: | Yes, sir. |
| COURT: | All right.  You need to have a little eye contact with me. |
| DEFENDANT: | Yes, sir. |
| COURT: | Do you understand when a person pleads guilty, they give up that presumption of innocence, understand? |
| DEFENDANT: | Yes, sir. |
| COURT: | Okay.  You are giving up your right to have the prosecutor . . . prove your guilt to a jury of six citizens beyond a reasonable doubt; do you understand that? |
| DEFENDANT: | Yes, sir. |
| COURT: | All right.  And finally, by entering your plea of guilty, you won't be testifying at a trial or remaining silent at a trial because we will not hold a trial.  We'll close the case out on your pleas of guilty this morning; do you understand that? |
| DEFENDANT: | Yes, sir. |
| COURT: | All right.  Is anyone threatening or forcing you to enter this plea? |
| DEFENDANT: | No, sir. |
| COURT: | You've been represented by [counsel], are you satisfied with his advice and his counsel? |
| DEFENDANT: | Sure. |
| COURT: | All right.  Mr. Tittle, you mentioned that you are on medication today; is that correct? |
| DEFENDANT: | Yes, sir.  Yes, sir. |

COURT:            All right.  Does that medication confuse you or in any way make you not understand what's going on in court right now?

DEFENDANT:        I understand.

COURT:            All right.  You do and you can assure me that you are clear-minded to understand what you're doing today?

DEFENDANT:        Sure.

COURT:            All right.  State, would you put your factual basis on the record?

[Factual basis stated by the prosecutor].

COURT:            The Court will find that those facts would be sufficient to sustain a plea of guilty to the two counts of sexual battery and the one count of kidnapping.

Mr. Tittle, the other thing that [counsel] mentioned that I want to go over with you to make sure that you're fully aware of is a piece of legislation that was passed by the lawmakers of the State of Florida.  It's called the Jimmy Ryce Act.  And it stands for this proposition:  Before an individual is released from prison, they are evaluated by a panel of experts, usually psychologists, to find out if the person is a danger to himself or the community in a sexual way.

If those experts find that the person is a danger, they'll communicate their findings to the local prosecutor.  In this case, it would be the prosecutors in this office, whoever they would be 30 years from now, and you are entitled to have what is called a jury trial, not a criminal trial, but a civil jury trial where a jury makes the decision as to whether you, at that time that you're being released from prison, are a danger, a present danger, to yourself or the community in a sexual way.

If the jury finds that the person is a danger, from prison, they're placed into a treatment facility.  If there's - - if the jury finds that they're not a danger, then, of course, they're just released from prison.

That proceeding, that jury trial, that individual is entitled to be

16

|  | represented by a lawyer that's appointed and paid for by the State and that person is also entitled to hire his own experts. So, that's kind of the Jimmy Ryce Act. Do you have any questions about the Jimmy Ryce Act, Mr. Tittle? |
|---|---|
| DEFENDANT: | No, sir. |
| COURT: | Okay. It is also contemplated that by this plea he would receive a designation of sexual predator or what? Sexual offender? I want to make sure that everyone is aware of that. |
| [COUNSEL]: | Judge, you're correct and I overlooked that designation. And let me see. |
| COURT: | The concept about sexual predator is after a person is released from prison, they have to register and they can no longer live in areas where children congregate, like near schools. |
| DEFENDANT: | Well, that's 12 and under, correct, sir? |
| COURT: | For people that are children, that is under 18. |
| DEFENDANT: | Under 18. But that would be the difference between a sex offender and predator, correct, sir? |
| COURT: | Right. So, I just want you to understand that there are those prohibitions that you can't go places where children congregate. And you'll also have to register with the law enforcement authorities so that they'll know where you're living. Have we located that designation? |
| [COUNSEL]: | No, Your Honor. Judge, I believe it's going to be a sexual predator based on that he has a sexual battery that occurred prior to this offense over in Tampa which he was convicted of prior to this offense. That would give him another conviction. |
| COURT: | All right. That's my understanding as well. |
| DEFENDANT: | Well, I'd still have to say it'd be a sex offender, Your Honor, because I've read a little bit about it. I'm not, you know, some of it's hard to understand. I could be wrong, but - - |
| COURT: | Right. Well, this is your second offense. |

17

| | |
|---|---|
| DEFENDANT: | Yes, sir. |
| COURT: | Because you have one that preceded this one. |
| DEFENDANT: | Yes, sir, I understand that. |
| COURT: | And was that for handling and fondling or was that for sexual battery in Hillsborough County? |
| DEFENDANT: | I guess they charged it as sexual battery, so. |
| COURT: | Okay. |
| DEFENDANT: | But my understanding was the predator was strictly not so much times convicted but the age of the victim - - |
| COURT: | Okay. |
| DEFENDANT: | - - is what made it predator. |
| COURT: | This victim was under 18. |
| DEFENDANT: | Yes, sir. |
| [PROSECUTOR]: | Judge, on the sexual predator criteria, it indicates that it'd have to be a felony capital or first-degree felony. Now, in this offense, he does, Judge, we are amending the information from first DVL to first-degree sexual battery. It's 794.011(4)(B). It's a first-degree felony.<br><br>In that sub-section for sexual predator criteria, the victim has to be a minor and defendant is not the victim's parent or guardian. In this case, the victim was 17 years of age. |
| COURT: | So that would make her a minor? |
| [PROSECUTOR]: | That's correct, Judge. |
| COURT: | All right. So it does receive that designation of sexual predator. |

. . . .

18

| | |
|---|---|
| COURT: | Okay. Incidentally, did you get a chance to read over the plea form? How far in school have you gone, sir? |
| DEFENDANT: | I got my GED, sir. |
| COURT: | Obviously, you read, right? |
| DEFENDANT: | Yes, sir. |
| COURT: | When you read the plea form over, did you note that it contains your rights as well as a waiver of your rights? |
| DEFENDANT: | Yes, sir. |
| COURT: | Okay. And he has signed it, [counsel]? |
| [COUNSEL]: | He has, Judge. |

(Doc. 10, Ex. 2, pp. 7-11, 13-16, 19-23, 27-28).

"A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)). Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Petitioner does not challenge the plea colloquy itself. Petitioner's sworn statements at the colloquy demonstrate that he understood both the charges against him and the consequences of pleading guilty and that he chose to plead guilty without coercion. *Stano v. Dugger*, 921 F.2d at

1141. Petitioner points to no record evidence establishing that he was incompetent when he entered his plea or that he involuntarily entered his guilty plea. Consequently, Petitioner fails to fails to meet his burden of establishing that the state post-conviction court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this ground. *See* 28 U.S.C. § 2254(d)(1), (2). Ground one warrants relief.

B.   Ineffective assistance of counsel

Along with his claim of trial court error for not holding a competency hearing, Petitioner in his memorandum of law alleges in claim 2 of ground two that his trial counsel rendered ineffective assistance by "fail[ing] to order a competency exam[ination]." (Doc. 2, p. 8)." The state post-conviction court rejected this claim on a procedural basis in Petitioner's Rule 3.850 motion:

> The Defendant next argues that counsel was ineffective for failing to order a competency hearing.
>
> A motion pursuant to [R]ule 3.850 is not a substitute for a direct appeal where the issues raised in the post-conviction motion could have been raised on direct appeal. *Pedroso v. State*, 420 So. 2d 908 (Fla. 2d DCA 1982). The Defendant is procedurally barred from arguing in a post-conviction motion that he was deprived of a purported right to a competency evaluation by a mental health expert because that issue could have been raised on direct appeal. *Rodriguez v. State*, 919 So. 2d 1252 (Fla. 2005). Similarly, a claim that the defendant was, in fact, incompetent to stand trial is likewise procedurally barred from a post-conviction motion because it should have been raised on direct appeal. *Patton v. State*, 784 So. 2d 380, 393 (Fla. 2000). Additionally, a defendant may not couch a claim of deprivation of a right to a mental health evaluation as an ineffective assistance of counsel argument. *Marshall v. State*, 854 So. 2d 1235, 1248 (Fla. 2003). Consequently, the Defendant's claim is denied.

(Doc. 10, Ex. 12, p. 2).

The state post-conviction court expressly relied upon an independent and adequate state procedural bar to reject Petitioner's substantive claim. The state appellate court affirmed the application of the procedural bar. Consequently, claim 2 of ground two is procedurally defaulted.

*See Harris*, 489 U.S. at 262; *Harmon*, 894 F.2d at 1274. Petitioner fails to demonstrate cause and prejudice excusing his default. *Carpenter*, 529 U.S. at 451; *Carrier*, 477 U.S. at 495-96. He neither alleges nor shows that the fundamental miscarriage of justice exception applies. *Henderson*, 353 F.3d at 892. Because Petitioner fails to proffer specific facts showing an exception to procedural default, claim 2 of ground two is procedurally barred from federal review.

Notwithstanding the procedural bar, Petitioner is not entitled to relief. Petitioner argues that trial counsel "was aware" of Petitioner's statements at the plea colloquy about his taking "a mind altering substance . . . but failed to order a competency exam." (Doc. 2, p. 8). He further argues that trial counsel "played a significant role" in the trial court's alleged violation of his due process rights by its failure to hold a competency hearing and that "[t]here were reasonable facts to show [counsel] that Petitioner may have been incompetent at the time of [the] guilty plea." (Doc. 2, p. 13).

Even assuming deficient performance, Petitioner fails to show resulting prejudice. "In order to demonstrate prejudice from counsel's failure to investigate his competency, [a] petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (quoting *Alexander v. Dugger* 841 F.2d 371, 375 (11th Cir. 1988)). As discussed in ground one, *supra*, Petitioner was evaluated by two mental health experts and found competent to proceed. Notably, Petitioner does not specifically allege that he was actually incompetent to proceed, only that "there were reasonable facts to show [counsel] that the Petitioner *may* have been incompetent at the time of the guilty plea." (Doc. 1, p. 13) (emphasis added). Petitioner cannot satisfy *Strickland's* prejudice prong with mere speculation or conclusory allegations. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a

21

constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).   Moreover, Petitioner has not presented evidence establishing that, if counsel had moved for a competency hearing, the state trial court judge would have granted the motion and would have found Petitioner incompetent to proceed.   *See Pate v. Robinson*, 383 U.S. 375, 385-86 (1966) (A trial judge must conduct a *sua sponte* sanity hearing only when the defendant's conduct and the evidence raises a "bona fide doubt" regarding the defendant's competence to stand trial.).   As noted in ground one, *supra*, nothing in the record indicates that Petitioner was incompetent when he pleaded guilty.

Petitioner's failure to establish both deficient performance and prejudice resulting from trial counsel's failure to move for a competency hearing precludes relief on this claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 691-92.

**Ground Two - claim 1**

Petitioner contends that his "plea was not entered in open court by the court 'assuming the guilty option,' a violation of Rule 3.172,[6] Fla. R. [Crim. P.]."[7]   (Doc. 1, p. 9).   He further contends that his due process rights were violated "when he had not been informed of his right to offer a plea in open court after being sworn in and that his plea was not entered in open court via camera." (Id.). The state post-conviction court rejected this claim in Petitioner's Rule 3.850 motion:

The Defendant further asserts that his due process rights were violated because the

---

[6] Rule 3.172, Fla. R. Crim. P., provides in relevant part:

> (b) All pleas shall be taken in open court, except that when good cause is shown a plea may be taken in camera.

[7] Petitioner presented this same allegation to the state post-conviction court as a due process violation. Although Petitioner does not specifically present the allegation in his federal petition as a due process violation, the court liberally construes the claim as such and considers the claim exhausted.

Defendant was not informed of his right to "offer a plea in open court after being sworn in." The Defendant alleges that his plea was not entered "in open court or via camera." Furthermore, the Defendant states that the Court should have asked him how he would like to plea rather than "assuming the guilty option."

The Defendant's claim amounts to an assertion of trial court error. Claims of trial court error are foreclosed from collateral review because they could have been raised on direct appeal. *Sampson v. State*, 845 So. 2d 271, 272 (Fla. 2d DCA 2003). Additionally the record reflects that the Defendant's plea was entered under oath in open court. Accordingly, the Defendant's claim is denied.

(Doc. 10, Ex. 12, p. 4) (court's record citation omitted).

The state post-conviction court expressly relied upon an independent and adequate state procedural bar to reject Petitioner's substantive claim. The state appellate court affirmed the application of the procedural bar. Consequently, claim 1 of ground two is procedurally defaulted. *See Harris*, 489 U.S. at 262; *Harmon*, 894 F.2d at 1274. Petitioner fails to demonstrate cause and prejudice excusing his default. *Carpenter*, 529 U.S. at 451; *Carrier*, 477 U.S. at 495-96. He neither alleges nor shows that the fundamental miscarriage of justice exception applies. *Henderson*, 353 F.3d at 892. Because Petitioner fails to proffer specific facts showing an exception to procedural default, claim 2 of ground two is procedurally barred from federal review.

Alternatively, even if not procedurally barred, the claim warrants no relief because, as the state post-conviction court noted, the record shows that the state trial court judge complied with Rule 3.172 by taking Petitioner's plea in open court. (Doc. 10, Ex. 2).

**Ground Two - claim 3**

Petitioner contends that his trial counsel rendered ineffective assistance by "failing to offer proof for mitigation because of [the] competency issue." (Doc. 1, p. 9). Petitioner argues in his memorandum that counsel's knowledge of Petitioner's "infirmities, not only from the hearing

23

proceedings but as well from past mental health evaluations that [Petitioner] had undergone," should have prompted counsel to offer evidence in mitigation because "such facts brought to the court's attention . . . show . . . some mitigating reasons to lower the sentence because of the traumas, addiction to numerous drugs and numerous other mitigating reasons the court may have considered had defense counsel pursued it." (Doc. 1, p. 15).

The state post-conviction court rejected this claim in Petitioner's Rule 3.850 motion:

> In further support of his motion, the Defendant argues that counsel was ineffective in failing to request mitigation due to the Defendant's mental health issues.
>
> The Defendant entered into a plea agreement with the State where the Defendant agreed to the specific judgment and sentence awarded. The Defendant was sentenced as a prison releasee re-offender according to Section 775.082(9), Florida Statutes (2007). Florida law mandates that an individual sentenced as a prison releasee re-offender is required to serve one hundred percent of the court-imposed sentence and is not eligible for parole, control[led] release, or any type of early release. The record indicates that the Defendant entered an agreed-upon plea whereby the Defendant was made aware of his sentence, he underwent a thorough plea colloquy, and the Defendant acknowledged that he understood the sentence he received. Consequently, the Defendant's claim is denied.

(Doc. 10, Ex. 12, pp. 2-3) (court's record citations omitted).

Petitioner was charged with and pleaded guilty to two first degree felonies (sexual battery). The State presented sufficient evidence at sentencing establishing that Petitioner qualifies as a prison releasee re-offender. (Doc. 10, Ex. 2, pp. 26-27). Florida law requires imposition of a minimum mandatory sentence of thirty years imprisonment for a prison releasee re-offender convicted of a first-degree felony. Fla. Stat. § 775.082(9)(a)(3). A Florida trial court judge does not have discretion to depart from the sentence mandated by § 775.082(9). *Ellington v. State*, 96 So. 3d 1131, 1131-32 (Fla. 1st DCA 2012). Consequently, Petitioner's trial counsel had no reason to offer mitigating evidence to try to reduce Petitioner's sentence.

Petitioner fails to meet either *Strickland's* deficient performance requirement or prejudice requirement to support his claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 691-92. The state post-conviction court neither unreasonably applied *Strickland* nor unreasonably determined the facts in rejecting this claim. *See* 28 U.S.C. § 2254(d)(1), (2).

**Ground two - claim 4**

Although not presented in his petition as a separate claim for relief, Petitioner in his memorandum of law alleges that trial counsel coerced him into entering his guilty plea.[8] (Doc. 2, p. 11). Specifically, Petitioner claims that trial counsel "was ineffective in forcing [him] to plead guilty" and that "counsel had told him that if he did not go back in [the courtroom] and tell the court that he understands everything, that he would go to prison for the rest of his life." (Doc. 2, p. 12). Petitioner alleges that he "would not have taken [the] plea absent the coercion." (Id.).

The state post-conviction court rejected this claim in Petitioner's Rule 3.850 motion:

> The Defendant alleges that counsel was ineffective in forcing the Defendant to plead guilty. The Defendant alleges that he was prejudiced by counsel "for allowing him to enter a plea and just being told by counsel to say 'Yes, sir' to avoid a life sentence."
>
> The Defendant's claim is refuted from the face of the record. The record indicates on its face that during the plea colloquy the Defendant's plea was entered knowingly, intelligently, and voluntarily, that he was not being threatened or coerced into entering the plea, and that he was satisfied with the representation he received from counsel. Counsel related to the court, in the presence of the Defendant, that he had talked with the Defendant about the plea, his defenses, what the State was going to do, and the Defendant did not object. Consequently, the Defendant's claim is denied.

(Doc. 10, Ex. 12, p. 2) (court's record citations omitted).

---

[8] The state post-conviction court treated this same allegation as a separate claim of ineffective assistance of counsel. The respondent does not address this claim in the response.

25

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. at 73-74. The record shows that the state trial court judge reviewed the plea agreement and Petitioner admitted that he had read and understood it and that he had not been coerced into signing it or entering his plea. (Doc. 10, Ex. 2, pp. 13-16, 27-28). Therefore, the state post-conviction court's rejection of this claim did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Accordingly, it is **ORDERED AND ADJUDGED** that Petitioner's Section 2254 petition (Doc. 1) is **DENIED** with prejudice. The clerk is directed to enter judgment against Petitioner and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of

appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in chambers this _24_ day of _February_ , 2014.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to:
Petitioner, *pro se*
Counsel of record